IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**JUNIOR VOLLEYBALL DIRECTORS ASSOCIATION, INC. d/b/a JUNIOR VOLLEYBALL ASSOCIATION**,

        Plaintiff,

v.                                         Case No.

**TEAM I.P. LLC d/b/a TEAMIP**,

        Defendant.

## COMPLAINT

Plaintiff Junior Volleyball Directors Association, Inc. d/b/a Junior Volleyball Association ("JVA"), for its complaint against Defendant Team I.P. LLC d/b/a TeamIP ("TeamIP"), alleges:

### THE PARTIES

1. Plaintiff JVA is a non-stock, nonprofit, corporation incorporated under Wisconsin law.

2. JVA's headquarters and principal place of operation is at 1414 Underwood Avenue, Unit 404, Milwaukee, Wisconsin 53213.

3. JVA promotes the growth of youth and junior volleyball through program and resource development, education, and events.

4. JVA offers its members, which includes volleyball club directors, coaches, and educators, tools to build and maintain successful youth and junior volleyball clubs, tournaments, and programs.

5. Defendant TeamIP is a for-profit, limited liability company organized under Florida law.

6. TeamIP's headquarters and principal place of business is at 701 NW Federal Highway, Suite 301, Stuart, Florida 34994.

7. TeamIP has two members: (1) Randall Sparks, and (2) Andrew Sparks.

8. Randall Sparks is an adult citizen of Florida domiciled at 5528 SW Bellflower Court, Palm City, Florida 34990.

9. Andrew Sparks is an adult citizen of Florida domiciled at 6001 NW Telford Avenue, Port Saint Lucie, Florida 34983.

10. TeamIP is a souvenir merchandiser that provides decorated apparel and branded promotional products for amateur sports organizations.

## NATURE OF THE CASE

11. This is an action for (1) breach of contract; and (2) declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

12. On December 7, 2021, JVA and TeamIP entered into a written contract titled "JVA and TeamIP Partnership Agreement" ("Agreement").

13. The Agreement was made effective as of October 1, 2021.

14. The term of the Agreement was October 1, 2021 to September 30, 2026

15. TeamIP assumed certain obligations and responsibilities under the Agreement as "the exclusive official tournament on-site and online merchandise provider of the JVA."

16. TeamIP agreed to perform the services described in the Agreement, including, but not limited to, selling JVA licensed apparel and merchandise online and at the seven JVA events listed in the Agreement for 2022, 2023, 2024, 2025, and 2026.

17. The Agreement includes a confidentiality provision that provides, in part: "Neither Party shall publicize the terms and conditions of this Agreement except as permitted by mutually written agreement, or as required by law."

18. Attached as **<u>EXHIBIT A</u>** and fully incorporated herein is a true and correct copy of the Agreement. Because of the confidentiality provision within the Agreement, Exhibit A is being filed separately along with a Motion to Restrict Access to Exhibit A.

19. A substantial, actual controversy exists between JVA and TeamIP as to their respective rights, obligations, and responsibilities under the Agreement.

20. JVA contends that TeamIP has repeatedly and materially breached the Agreement, including, but not limited to, the implied covenant of good faith and fair dealing, by, among other acts and omissions, failing to timely and properly fulfill its obligations and responsibilities under the Agreement.

21. TeamIP's material breaches of the Agreement have directly and proximately caused damage to JVA in an amount that exceeds $75,000.

22. It is JVA's position that JVA lawfully and properly terminated the Agreement pursuant to and in accordance with the terms of the Agreement.

23. It is also JVA's position that it has fulfilled all of its obligations and responsibilities under the Agreement.

24. TeamIP, on the other hand, denies that it has materially breached the Agreement.

25. Because TeamIP denies that it has materially breached the Agreement, TeamIP contends that JVA could not lawfully terminate the Agreement.

26. According to TeamIP, because JVA's termination of the Agreement was purportedly unlawful and improper, TeamIP is entitled to recover damages of at least $988,000 from JVA.

27. JVA denies: (1) that the termination of the Agreement was unlawful and improper; (2) that TeamIP is entitled to recover monetary damages from JVA or obtain any other relief; and (3) that JVA has any further obligations or responsibilities to TeamIP under the Agreement.

28. As described herein, JVA and TeamIP have adverse legal interests of sufficient immediacy and reality.

29. This controversy between JVA and TeamIP is definite and concrete, not hypothetical or abstract.

30. This controversy between JVA and TeamIP as to their respective rights, obligations, and responsibilities under the Agreement is ripe for adjudication before this Court.

31. JVA seeks a judicial declaration that: (1) TeamIP has repeatedly and materially breached the Agreement; (2) JVA was entitled to terminate the Agreement because of TeamIP's material breaches of the Agreement; (3) JVA lawfully and properly terminated the Agreement; (4) JVA has no further obligations or responsibilities to TeamIP under the Agreement; and (5) TeamIP is not entitled to recover damages or obtain any other relief from JVA under the Agreement.

## JURISDICTION AND VENUE

32. JVA is a citizen of Wisconsin under 28 U.S.C. § 1332 because JVA is a Wisconsin corporation whose headquarters and principal place of operation is in Wisconsin.

33. TeamIP is a citizen of Florida under 28 U.S.C. § 1332 because TeamIP's two members, Randall Sparks and Andrew Sparks, are both domiciled in Florida and thus citizens of Florida.

4

34. Because JVA and TeamIP are citizens of different states, and because the amount in controversy, exclusive of interest and costs, exceeds $75,000, this Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

35. This Court has general and specific personal jurisdiction over TeamIP under Fed. R. Civ. P. 4(k)(1)(a) and Wis. Stat. § 801.05 because TeamIP has engaged in substantial and not isolated activities in this judicial district here in Wisconsin, including, but not limited to: entering into the Agreement with JVA, a Wisconsin citizen; promoting and selling JVA licensed apparel and merchandise at JVA events that took place in this judicial district; and marketing for sale and selling JVA licensed apparel and merchandise to citizens of Wisconsin who are domiciled in this judicial district. Further, the dispute and various of the actions and/or omissions alleged herein arose in Wisconsin and in this judicial district.

36. Venue properly lies in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to JVA's claims occurred in the Eastern District of Wisconsin where JVA's headquarters and principal place of operation is located.

37. This Court may declare rights and other legal relations of the parties under 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57 because an actual and justiciable controversy exists concerning the legal relations between JVA and TeamIP and their respective rights, obligations, and responsibilities under the Agreement.

**FACTUAL BACKGROUND**

38. Under the Agreement, JVA granted to TeamIP the exclusive right to sell JVA licensed apparel and merchandise online and at seven JVA events to be held annually in 2022, 2023, 2024, 2025, and 2026.

39. TeamIP's responsibilities under the Agreement included, but were not limited to:

- "managing and maintaining the ecommerce store including uploading all graphics, receiving payments, fulfilling orders, shipping and responding to all customer questions."

- "employee[] staffing and their payroll."

- "any and all costs and expenses associated with the procurement of merchandise."

- "all load-in, set up, load-out and financial reconciliation of sold merchandise at the venue."

(*See* **Exhibit A** at pp. 2-3.)

40. The term of the Agreement was October 1, 2021 to September 30, 2026.

41. JVA held its "World Challenge" event from Friday, April 8 through Sunday, April 10, 2022 in Louisville, Kentucky at the Kentucky Exposition Center and Kentucky International Convention Center.

42. The three-day JVA World Challenge event included more than 1,000 volleyball teams from around the country, 130 courts, and 4,600 matches.

43. TeamIP was to have two separate booths at the JVA World Challenge where coaches, players, fans, and other event attendees could purchase JVA licensed apparel and merchandise. One booth was to be located at the Kentucky Exposition Center and the other at the Kentucky International Convention Center.

44. TeamIP failed to have all of the JVA licensed apparel and merchandise, including that with the 2022 World Challenge logo, timely delivered to the JVA World Challenge at the Kentucky Exposition Center and Kentucky International Convention Center so that all such apparel and merchandise could be available for purchase at the two separate booths at the start of the event at 8:00 a.m. on Friday, April 8, 2022.

45. After the World Challenge had already commenced on Friday, April 8, 2022, TeamIP was still setting up its booth at the Kentucky Exposition Center. And by late morning on Friday, April 8, 2022, TeamIP still did not have an operational booth at the Kentucky International Convention Center where JVA licensed apparel and merchandise could be purchased.

46. After belatedly setting up the booths at the JVA World Challenge after the event had already begun on Friday, April 8, 2022, TeamIP then quickly sold out of apparel and merchandise with the 2022 JVA World Challenge logo the following day on Saturday, April 9, 2022. Because TeamIP did not have sufficient quantities of apparel and merchandise with the 2022 JVA World Challenge logo, no such apparel and merchandise was made available for purchase at the Kentucky International Convention Center.

47. In addition to not having sufficient quantities of apparel and merchandise available, TeamIP also failed to have a sufficient variety of apparel and merchandise available for purchase at the 2022 JVA World Challenge.

48. TeamIP also failed to arrange to have Wi-Fi available for its two booths as the Agreement required.

49. On Wednesday, April 27, 2022, JVA and TeamIP participated in a conference call during which they discussed TeamIP's failures at the 2022 JVA World Challenge, which were material breaches of TeamIP's obligations and responsibilities under the Agreement.

50. On Friday, April 29, 2022, JVA sent written notice to TeamIP that identified the following "areas for improvement":

- Set up needs to be completed the day before the event begins, and the store(s) need(s) to be open by the first whistle.

7

- Have more merchandise in sizes and variety, including more merchandise with the original event logo.

- Sell pink shirts and pink long sleeves with the JVA event logo; consider doing this at all events.

- Consider lowering the cost of hoodies to $65 to increase amount of sales.

- Since Action Face will no longer be there, Wi-Fi will not be needed, and if it is, TeamIP is responsible for ordering it and paying the cost.

51. TeamIP did not and/or could not cure the material breaches within thirty (30) days in accordance with the terms of the Agreement.

52. Consequently, TeamIP continued to be in material breach of the terms of the Agreement.

53. JVA held the "West Coast Cup" in Long Beach, California from Saturday, May 28 to Monday, May 30, 2022.

54. Prior to the start of the JVA 2022 West Coast Cup, TeamIP had apparel and merchandise shipped to the event, some of which was delivered without labels for identification.

55. When TeamIP finally arrived late in the afternoon on Friday, May 27, 2022 for the West Coast Cup that was to begin the next morning, TeamIP did not have adequate staff to unload its equipment, apparel, and merchandise, which necessitated that JVA have its own staff and personnel assist TeamIP with the unloading and setting up of TeamIP's booth.

56. As of at least Monday, May 30, 2022, JVA licensed apparel and merchandise for the West Coast Cup was still not available for purchase on TeamIP's website.

57. TeamIP also failed to plan ahead and make sufficient arrangements to have its remaining apparel, merchandise, and equipment removed at the conclusion of the 2022 West Coast

8

Cup, which resulted in TeamIP leaving product and equipment at the event site in breach of TeamIP's obligations under the Agreement.

58. JVA held its "JVA Summerfest" event in Columbus, Ohio on Saturday, June 4 and Sunday, June 5, 2022.

59. TeamIP had boxes of apparel and merchandise for the 2022 JVA Summerfest event delivered to the event site on Friday, June 3, 2022. However, TeamIP once again did not have personnel available on site to receive the boxes when they were delivered. Consequently, JVA's own staff had to move the boxes themselves to the location of TeamIP's booth.

60. As of approximately 3:30 p.m. on Saturday, June 4, 2022, JVA Summerfest apparel and merchandise was still not available for purchase at TeamIP's booth. On Saturday, June 4, 2023 at 3:39 p.m., JVA notified TeamIP in writing of this fact. TeamIP subsequently responded to JVA in writing and explained: "The whites just arrived and 1,500 garments are now for sale. We had a printer issue."

61. On or about July 18, 2022, a woman contacted JVA and explained that she had placed an order with TeamIP at the JVA West Coast Cup event nearly two months prior, but had yet to receive her merchandise. The customer explained that she had contacted TeamIP, but received no response.

62. The Agreement includes a termination provision that states in relevant part:

"A party may terminate this Agreement upon notice if the other party breaches any material provision of this Agreement and does not cure such breach (provided that such breach is capable of cure) within 30 days after being provided with written notice of such breach. Upon the effective date of termination of this Agreement, all rights granted and obligations set forth in this Agreement will cease . . . ."

(**Exhibit A** at p. 3.)

9

63. On or about August 2, 2022, JVA sent correspondence to TeamIP providing notice of JVA's termination of the Agreement.

64. Attached as **EXHIBIT B** and fully incorporated herein is a true and correct copy of the written notice that JVA provided to TeamIP on or about August 2, 2022.

65. TeamIP had materially breached the Agreement by, among other acts and omissions:

   a. Failing to manage and maintain the ecommerce store;

   b. Failing to procure sufficient merchandise for sale at JVA events, which negatively impacted revenue;

   c. Failing to timely and appropriately load-in and set up at JVA events;

   d. Failing to provide an appropriate selection of merchandise for sale at JVA events, which negatively impacted revenue; and

   e. Failing to manage appropriate delivery of merchandise for sale at JVA events, which negatively impacted revenue.

66. Indeed, TeamIP's material breaches of the Agreement were not all capable of being cured within thirty (30) days or otherwise because the financial and reputational damage to JVA had already been done.

67. On or about August 31, 2022, TeamIP responded to JVA with correspondence stating that (1) TeamIP did not accept or agree to JVA's termination of the Agreement; and (2) TeamIP intended to continue to perform under the Agreement, and TeamIP expected JVA to do the same.

68. Attached as **EXHIBIT C** and fully incorporated herein is a true and correct copy of the correspondence that TeamIP sent to JVA on or about August 31, 2022.

69. On or about January 25, 2023, JVA sent additional written notice to TeamIP informing it of TeamIP's further and ongoing material breaches of the Agreement, including TeamIP's failure to take responsibility "for all load-in, set up, sales, load-out and financial reconciliation of sold merchandise" as the Agreement required.

70. On or about January 15, 2024, JVA sent additional written notice to TeamIP notifying TeamIP that the Agreement was terminated due to TeamIP's repeated material breaches of the Agreement and TeamIP's failure and/or inability to cure such material breaches despite repeated requests from JVA.

71. Attached as **EXHIBIT D** and fully incorporated herein is a true and correct copy of the written notice that JVA sent to TeamIP on or about January 15, 2024.

72. The written notice that JVA sent to TeamIP on or about January 15, 2024 notified TeamIP of its repeated failure to set up its operations at JVA events in a timely fashion, which decreased revenue, negatively impacted JVA's reputation, and deprived participants and attendees of JVA events the opportunity to purchase JVA licensed merchandise throughout the full duration of the tournament.

73. On January 17, 2024, TeamIP responded to JVA contending JVA's termination of the Agreement was not lawful, valid, or effective.

74. The parties subsequently exchanged further correspondence, but have not resolved their dispute under the Agreement.

## COUNT I (BREACH OF CONTRACT)

75. JVA incorporates by reference its allegations in the paragraphs above as if fully stated herein.

76. JVA has fulfilled all of its obligations under the Agreement.

77. TeamIP has materially breached the Agreement, including the implied covenant of good faith and fair dealing, through its actions and omissions described herein.

78. TeamIP's material breaches of the Agreement, including the implied covenant of good faith and fair dealing, have damaged JVA in an amount to be determined at trial that is greater than $75,000.

## COUNT II (DECLARATORY JUDGMENT)

79. JVA incorporates by reference its allegations in the paragraphs above as if fully stated herein.

80. TeamIP materially breached the Agreement, including the implied covenant of good faith and fair dealing, by its actions and omissions described herein.

81. JVA repeatedly provided written notice of such material breaches to TeamIP pursuant to and in accordance with the terms of the Agreement.

82. TeamIP could not and/or did not cure its material breaches of the Agreement.

83. JVA is entitled to a declaration that (1) TeamIP materially breached the Agreement; (2) JVA properly terminated the Agreement; (3) JVA owes no further duties or obligations to TeamIP under the Agreement; and (4) TeamIP is not entitled to recover damages or any other relief from JVA under the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, JVA respectfully requests:

A. The entry of a judgment in favor of JVA and against TeamIP for damages in an amount to be determined at trial, but greater than $75,0000, for TeamIP's material breaches of the Agreement;

B. A judicial declaration that:

(i) TeamIP materially breached the Agreement;

(ii) JVA lawfully and properly terminated the Agreement effective as of January 15, 2024 at the latest;

(iii) JVA owes no further duties or obligations to TeamIP under the Agreement;

(iv) TeamIP is not entitled to recover damages or any other relief from JVA under the Agreement;

C. Awarding JVA its attorneys' fees, costs, and expenses; and

D. Awarding JVA any other and further relief that is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff JVA demands a trial by a jury of 12 people.

Dated: March 8, 2024   **MICHAEL BEST & FRIEDRICH LLP**

By: */s/ Ted A. Wisnefski*
Ted A. Wisnefski, SBN 1038316
Peter T. Sandvick, SBN 1114549
790 N. Water Street, Suite 2500
Milwaukee, WI 53202
Phone: 414.271.6560
Fax: 414.277-0656
tawisnefski@michaelbest.com
ptsandvick@michaelbest.com

*Attorneys for Plaintiff Junior Volleyball Directors Association, Inc. d/b/a Junior Volleyball Association*